## WAYCROSS AIR-LINE RAILROAD COMPANY *v.* SOUTHERN PINE COMPANY OF GEORGIA.

Where A, owning the stock of a railroad company, sells it and the railroad to B, and for himself and his assigns covenants with B that he will erect a sawmill to saw up the timber on certain of his lands adjacent to the line of the railroad and will ship the lumber over the railroad at a certain rate of freight at which B agrees the company will transport it; and afterwards A sells the timber on the land to C, who, for himself and his assigns, covenants to erect the mill and furnish the lumber to the railroad company for transportation at the agreed rate of freight charges, and thereafter the timber is sold to D with like covenants between C and D, *held*:

1. There is no mutuality between the railroad company and the covenantors.
2. There is no privity of contract between the railroad company and the covenantors.
3. The covenants in the different conveyances being personal between each vendor and the purchaser from him and relating to matters collateral to the realty conveyed, and there being no privity of estate between the railroad company and the covenantors, the covenants are not such as run with the land or with the timber rights so as to impose their burden upon the purchaser of the timber.
4. It follows that the railroad company has no right in equity to enjoin the last purchaser from diverting the lumber from it and shipping it over another railroad.

Submitted March 1, — Decided March 10, 1902. Rehearing denied March 31, 1902.

Petition for injunction. Before Judge Bennet. Coffee superior court. January 28, 1902.

*J. L. Sweat,* for plaintiff, cited: Civil Code, §§ 3140, 3612, 3631, 3637, 3638, 3656, 3657, 3664, 3971, 4939; 10 *Ga.* 311; Id. 503; 12 *Ga.* 52; 40 *Ga.* 676; 46 *Ga.* 281, 241; 53 *Ga.* 689; 64 *Ga.* 492;

72 *Ga.* 819; 98 *Ga.* 391; 1 Addison, Con. (Morgan's 1st Am. ed.) 56, 602; 3 Pom. Eq. Jur. (2d ed.) § 1295; 70 Md. 493 s. c. 3 L. R. A. 582; 41 Minn. 461, s. c. 6 L. R. A. 118.

*W. E. Kay* and *John C. McDonald,* for defendant, cited: 73 *Ga.* 570; 101 *Ga.* 810; Clark, Con. 524, § 223; 16 Am. & Eng. Enc. L. (1st ed.) 864, 868; 75 *Ga.* 513; 12 *Ga.* 201; 35 *Ga.* 128, 132; 72 *Ga.* 205; 84 *Ga.* 5; High, Inj. (2d ed.) § 1179; Bingham, Real Prop. (ed. of 1868) 408, 417; 103 *Ga.* 409; 2 Devlin, Deeds, § 942; 9 Am. & Eng. Enc. L. (1st ed.) 893, note 3; 97 Am. Dec. 679; 104 *Ga.* 188, 201; 109 *Ga.* 716; Civil Code, §§ 2188 et seq., 3668.

SIMMONS, C. J.    It appears from the record that J. S. Bailey & Co. owned the stock of the Waycross Air-Line Railroad Company, and that, on February 4, 1899, they sold the stock and the railroad to Wadley and others. Bailey & Co. and the purchasers entered into a contract wherein the former agreed within twelve months to erect a sawmill at some point on the line of the railroad, and to operate it for the purpose of converting into lumber the timber on lands owned by Bailey & Co. contiguous to the railroad, and to ship the lumber over the railroad. On the 23d of the same month, Bailey & Co. sold the timber on these lands to J. R. & T. Bunn. In the contract by which the timber was conveyed, the Bunns covenanted with Bailey & Co. to erect on the land, by November 1, 1899, a sawmill of a designated capacity, and to operate the same to convert into lumber the timber conveyed, agreeing, in the event of a breach of this covenant, to pay to Bailey & Co. $20,000 as liquidated damages. They also covenanted to ship the lumber thus made over the Waycross Air-Line Railroad, Bailey & Co. on their part guaranteeing that the freight rate should not exceed a certain amount. On March 2, 1899, the Bunns sold the timber to the Southern Pine Company of Georgia, the contract containing covenants and guaranty similar to those made in the conveyance from Bailey & Co. to the Bunns. The purchasing company gave bond to secure the performance of its covenants, but stipulated that, if the Waycross Air-Line Railroad Company should release Bailey & Co. and the Bunns from the performance of their covenants, this bond should be canceled and satisfied, provided the securities given by Bailey & Co. and the Bunns to secure their agreements should be returned to them. The Southern Pine Company erected the mill, converted part of the timber into lumber

which was shipped over the Waycross Air-Line Railroad for some eighteen months, and then the mill was destroyed by fire. The Southern Pine Company began shipping over another railroad much of the lumber made (by its other mills) from the timber conveyed by the above-mentioned instruments. The Waycross Air-Line Railroad Company thereupon filed an equitable petition to enjoin the Southern Pine Company from shipping the lumber over any railroad other than that of petitioner. At the interlocutory hearing the judge, after hearing the evidence and argument, refused the injunction. The plaintiff excepted.

1. There was considerable evidence introduced at the hearing, but the view we take of the case renders it unnecessary to set out any of it except such as has been stated above. The conveyances and covenants between the parties were put in evidence by the plaintiff, and showed that the plaintiff was not a party to any of them. The first was between Bailey & Co. and Wadley and his associates, who purchased the railroad and the stock. In this contract the vendors agreed to build a mill and ship the lumber over the railroad. The contract was not with the plaintiff, but was between the vendors and the purchasers of the plaintiff's stock. A corporation can not contract in this manner. If it contracts at all, it must do so as a corporation and not in the names of its individual stockholders. While in each of the transactions above set out the owner or purchaser of the timber agreed to ship the lumber over the plaintiff's line, the plaintiff itself was not a party and was not bound to do anything under the contract. If it had refused to transport the lumber at the designated freight rate, it would not have been liable for breach of these contracts. So far as the plaintiff was concerned, these contracts were unilateral. There was no mutuality between the plaintiff and the covenantors.

2. There was no privity of contract between the plaintiff and the defendant. As a general rule a contract does not impose liabilities or confer rights upon persons not parties thereto, so as to entitle them to sue in their own names for its breach. It is true there are exceptions to this rule, which will be found fully stated in Clark on Contracts, 508 et seq. The facts of the case under consideration do not bring the plaintiff within any of the exceptions. The contract between Bailey & Co. and Wadley and his associates seems to have been made for the benefit of the latter, and not directly for

the benefit of the plaintiff.   The agreement to build the mill and ship the lumber over the plaintiff's line would probably have increased the value of the stock purchased by the covenantees.   As to the later agreements this is clearer.   In them the covenants seem to have been exacted in each case to protect the covenantees from liability on the covenants they had previously given.   This seems to have been the understanding of the parties to the last contract; for it was stipulated that the bond given to secure the performance of the covenant should be canceled if the railroad company released the prior covenantors.   We think, therefore, that there was no privity of contract between the plaintiff and the defendant, and that the former had no right to proceed in its own name against the latter even in equity.

3. It was argued, however, by counsel for the plaintiff in error, that these covenants between the different parties were such as would run with the land, and that plaintiff was entitled to sue on them and to enjoin their breach.   If what we have said above is true, the plaintiff had no right or interest in the contracts.   It was not a party to any of them and had no right to enforce them against the defendant.   There was no privity of estate of any kind between the plaintiff and any of the covenantors.   It had never owned the land or the timber, and had never sold or purchased any interest in either.   There could be no privity of estate between it and the defendant.   Further than this, the covenants were not real but personal, and were collateral to the land.   They were not a benefit to the land, but on the contrary, if they were to be held to run with the land, would impose a burden on it.   For these reasons we think that even if the plaintiff had a right to enforce the covenants made by Bailey & Co., those covenants were not such as to run with the land.   1 Warvelle, Vend. (2d ed.), §§ 421, 422.

4. There was no error in refusing the injunction.

*Judgment affirmed.   All the Justices concurring, except Little, J., absent.*