## SEABOARD AIR-LINE RAILWAY *v.* OCILLA SOUTHERN RAILROAD COMPANY.

Owners of steel rails and fastenings entered into a written contract to "demise, lease and farm-let" them to an individual, at a stipulated rental to be paid semi-annually, and with the privilege on the part of the lessee of purchasing the property at a fixed price, before the termination of the lease in any way. It was provided that on failure to pay any installment of rent, after notice, the lessors might take possession of the property, and the lessee agreed to pay for any of it which might have been otherwise disposed of. It being understood that the property would be used in constructing about six miles of a railroad, the lessee conveyed the right of way for that distance, and its appurtenances, as a security for the payment of the amounts agreed to be paid by him. The contract provided that there should be no assignment of the lease without the written consent of the lessors; but that, it being contemplated that the lessee intended to construct and operate a railroad, the lessors would give authority to sublet the rails and fastenings to any railroad corporation formed for the purpose of maintaining and operating the road, provided the written assent of the lessors should be first given, in order to insure a reasonable and proper use of the property leased by reliable subtenants, the payment of rentals when due, and the prompt return of the property upon the termination of the term. The lessors (or the successor to the rights of the original lessors) filed an equitable petition against the original lessee and the railroad company which was alleged to have been organized and to be operating the railroad, including that part of it on which the leased rails were laid and the leased fastenings were used, and which company was alleged to have adopted the contract. It was sought to obtain a return of the property, to recover judgment and enforce the security for the amounts of money due, and to have general equitable relief. *Held*, that it was error to dismiss the action as to the defendant railroad company on general demurrer.

APRIL 23, 1915.

Equitable petition. Before Judge George. Irwin superior court. July 7, 1914.

The Seaboard Air-Line Railway brought its petition against J. A. J. Henderson and the Ocilla Southern Railroad Company, alleging in substance as follows: S. Davies Warfield and R. Lancaster Williams, as receivers appointed by the United States court and then in charge of and operating the Seaboard Air-Line Railway, under proper authority of the court of their appointment, on March 20, 1909, entered into a contract of lease with Henderson for certain steel rails, angle-bars, and fish-plates for a term of six years, with the right of renewal for three years in addition, upon certain terms and conditions set out in the contract attached to the petition. The rails, bars, and plates were, in pursuance of the contract, delivered to Henderson, accepted by him, and laid upon the right of way described in the contract as and for trackage for the railroad referred to therein, and were thereafter used in and about the operation of said railroad. On November 4, 1909, all the property, rights, franchises, contracts, claims, and demands of the receivership were, by order of the proper court, transferred, set over, assigned, conveyed, and delivered to the plaintiff. After the execution of the lease contract and the delivery of the rails, plates, and bars to Henderson, but at what particular time or by what particular method the plaintiff does not know, Henderson subleased or transferred the rails, plates, and bars, and the lease contract, to the Ocilla Southern Railroad Company, it being the railroad corporation formed for the purpose of maintaining and operating the railroad referred to in said lease contract. The company accepted and has ever since used the property in and about the operation of its railroad, under and by virtue of the terms, conditions, and covenants of the lease contract, all of which it adopted as its own, with full knowledge thereof. Henderson was then and has since remained the president of the company. The rental was payable semi-annually in advance. Default was made in making the payment due on January 1, 1912, amounting to $400.98, and again default was made in making the payment due on July 1, 1912. These defaults continued for more than sixty days. On September 14, 1912, the plaintiff notified Henderson and the Ocilla Southern Railroad Company that it declared the lease forfeited, canceled, annulled, and terminated, except in so far as it enabled the plaintiff

to enforce its rights thereunder, and that after the expiration of ten days the plaintiff would take possession of the leased property, but that such notice was not to be considered as a waiver of any other breach of the contract not referred to therein. Other failures to pay have also occurred since the notice. Henderson and the defendant company refused and failed to deliver the leased property to the plaintiff. The plaintiff is advised and believes that it could not take possession of such property, and that the ordinary methods of procedure at law are not available, because the rails, plates, and bars have become impressed with a public use, the operation of the trains of the railroad company in connection with the discharge of the duties of the railroad company to the public. Plaintiff is remediless by the strict rules of the common law, which are inadequate to grant the necessary relief, and under them a multiplicity of suits would be necessary. The prayers are, that the defendants be required to return the rails, plates, and bars to the plaintiff at Ocilla, free of cost to the plaintiff; that they be required to pay to the plaintiff such damages as it may be entitled to for the breach of any covenant in the contract of lease, as well as the rental with interest thereunder from the respective dates of maturity; that the damages to which the plaintiff may be entitled, other than the installments of rent and interest, which are not at this time capable of computation (such as the cost of removing the rails and fastenings upon the right of way, the damage arising from misuse of them or such of them as may have been disposed of), may be ascertained; that the plaintiff have judgment for the installments of rent past due, with interest thereon, and for damages which may be ascertained; that "defendant" be required to deposit in the registry of the court a sum of money sufficient to pay the amount of rental and interest due to the plaintiff; that a bond be required to be given to insure the plaintiff against loss by the continued use of the property, and because of the "defendant's" failure to keep any of the covenants of the lease, and particularly that one as to returning the track and fastenings and the cost of replacing any not returned; that the plaintiff's lien be established, as provided in the contract of lease, upon all the rights of way, and the rights, privileges, franchises, and appurtenances thereto appertaining for the six miles over and along which the rails and fastenings have been laid; and for general relief and process.

Attached to the petition was a copy of the contract executed by Warfield and Williams as receivers, and by Henderson. It provided that the receivers "demised, leased and to farm-let" to Henderson 63,360 lineal feet of fifty-pound steel rails, with the angle-bars or fish-plates necessary to the laying of the rails, for trackage for a distance of six miles running southwardly from the track of the Seaboard Air-Line Railway at Ocilla to a point designated on an attached map. The term specified was six years, with a right of renewal for three years more by giving written notice to the lessors. The lessee covenanted to pay the sum of $801.97 annually, payable in semi-annual installments. He further covenanted to subject the property to ordinary uses only, except in cases of emergency, for the purposes for which it was intended to be used, and upon the termination of the lease to return it to the lessors at Ocilla, at his expense, in like condition as when delivered to him, ordinary wear and tear excepted; and in case he should fail to pay any amount due as rent within sixty days after its maturity, the lessors should have the right "to terminate this lease, and, at the expiration of ten days thereafter, to retake possession of and move said rails and fastenings, and to collect from said lessee the cost of removing and returning said rails and fastenings to said Ocilla, and an amount of money equivalent to such cost in the event they are moved elsewhere, and, upon the expiration of ten days after the exercise of the right to terminate the lease, thenceforth this indenture and the estate, rights, and privileges hereby granted, and the other clauses and articles contained herein shall cease and determine and be void, except to enable the said lessors or their successors to collect such rent and other sums due by the said lessee hereunder." The lessee agreed to replace such of the property as might have been "consumed by use or otherwise disposed of," with other similar property of equal value. As security for the payment of the rental and other moneys agreed to be paid, the lessee transferred, assigned, and conveyed to the Seaboard Air-Line Railway, as a part of the receivership estate, the right of way, with the privileges, franchises, and appurtenances for the six miles over and along which the rails should be laid. In case of default by the lessee, it was provided that the lessors, after giving ten days written notice, might enter upon, use, and enjoy, through legal proceedings or without them, such rights of way, privileges, franchises, and appurtenances, and

should have the right to sell them at public or private sale. The lessor agreed that the lessee should have the right to buy the rails and fastenings, before the termination of the lease, at a specified price. It was further agreed that the lease should not be assigned without the written consent of the lessors; and that if it should be so assigned, it should be lawful for the lessors to declare it terminated, and to re-enter and take possession of the property. Then followed this provision: "It is understood by and between the parties, however, in this connection that the said lessee intends to construct, maintain, and operate a railroad from Ocilla, Irwin county, Georgia, southwardly to or in the direction of Nashville, in the county of Berrien, Georgia, and that the said rails or fastenings are to be laid for trackage for the six (6) miles running southwardly from the track of the Seaboard Air-Line Railway at Ocilla, at a point indicated by the mark 'XXX' on the [map] hereto attached. And the said receivers shall give full power and authority to the said Henderson to sublease the said rails and fastenings to any railroad corporation formed for the purpose of maintaining and operating said railroad; provided, the written assent of said receivers to the acceptability to them of the said railroad organization as such sublessees be first given. It is understood, however, that the purpose for requiring this assent of the said receivers is only to insure a reasonable and proper use of the said rails and fastenings for the purposes for which they [are] leased, by reliable subtenants, the payments, when due, of the rentals herein stipulated, and the prompt return, as herein provided, of said property to said lessors." It was agreed that the terms of the lease should be binding on the receivers and their successors, on the Seaboard Air-Line Railway and its successors or assigns, and on any purchaser who might buy the property of that company at receiver's sale, and that all covenants by the lessee should inure to the benefit of such parties.

The court sustained a general demurrer filed by the Ocilla Southern Railroad Company, and the plaintiff excepted.

*Thomas Eason* and *Anderson, Cann & Cann,* for plaintiff.

*H. J. Quincey,* for defendant.

LUMPKIN, J. (After stating the foregoing facts.)

It was error to dismiss this case as to the Ocilla Southern Railroad Company on general demurrer. The petition alleged that the

plaintiff leased the rails and fastenings to Henderson, who either assigned the lease or sublet the property to that company, which was in possession and had adopted the contract, and that the defendants had failed to pay the rent and refused to deliver the leased property. In regard to rights of way it has been held that when a railroad company is in possession of land using it as a right of way, although not having acquired the legal title thereto, the landowner will be estopped from ejecting the company from the premises, if it is shown that either the original entry was with his consent, or that the entry without his consent was so long acquiesced in that to allow the company to be ejected would either dismember the property of such company, or essentially interfere with its ability to discharge the public duties incumbent upon it; but that this is subject to the qualification that the landowner is entitled to some compensation for his property, and that this must be ascertained and paid to him before the corporation is vested with a complete right to hold and enjoy such property as its own. *Charleston &c. Railway Co.* v. *Hughes,* 105 *Ga.* 1, 17 (30 S. E. 972, 70 Am. St. R. 17). The destruction of the ability of a railroad company to perform its duties to the public was considered important in reaching that result. If this or similar reasoning should be considered applicable to rails and fastenings intended to be attached and actually attached to the railroad as a part of a track to be used by a railroad company, under a contract of the character of that here involved, so as in any way to affect the agreement as to the right of the lessor of such rails and fastenings to remove them on failure to pay rent for them, there would be no question that the railroad company in possession and use of the property would be not only a proper but a necessary party defendant to an action to enforce the contract. If, on the other hand, it should be held that the rails and fastenings, though thus leased and used, stand like ordinary personal property hired, with a reservation of a right to retake possession upon failure to pay rent (Webster Lumber Co. *v.* Keystone Lumber &c. Co., 51 W. Va. 545, 42 S. E. 632, 66 L. R. A. 33, and note p. 58), then the railroad company was, under the allegations, in possession and use of the property, and wrongfully refused to deliver it. In that event it could be properly made a party to an action to recover the property.

In addition to this, it was alleged that the company adopted the

contract of Henderson; and it was sought to enforce a lien upon a portion of the right of way in the possession and use of the company, for the purpose of obtaining payment of the sums of money alleged to be due to the plaintiff. The requirement of a written assent in advance by the lessors to a sublease to a railroad company was expressly stated to be for the benefit and protection of the lessors, and could be waived. The Ocilla Southern Railroad Company was a proper party to such a proceeding. See, in this connection, *Williams* v. *Terrell,* 54 *Ga.* 462. This contract was called a lease, the payments to be made were termed "rent," and the technical words "demise, lease, and farm-let" were used, and a privilege of purchase was given. The writer of this opinion has to some extent employed the terms which the parties themselves have used. If such a contract be considered like a lease of realty, see *Potts-Thompson Liquor Co.* v. *Potts,* 135 *Ga.* 451 (69 S. E. 734). The action invoked the equitable jurisdiction of the court. It was dismissed on general demurrer. We need not decide the important questions above indicated, in advance of a trial and a full development of the facts, or declare what may be a proper decree to be entered with respect to the company. But in no event was it right to dismiss the case as to it.

Counsel for the defendant in error relied on the decisions in *Waycross Air-Line R. Co.* v. *Southern Pine Co.,* 115 *Ga.* 7 (41 S. E. 271), and *Atlantic & Birmingham R. Co.* v. *Southern Pine Co.,* 116 *Ga.* 224 (42 S. E. 500), both of which cases grew out of the same transaction. An examination of the facts there involved will show that they were entirely different from those in the present case. In them there was no question of lease and sublease or assignment of a lease; none as to the propriety of dismembering a railroad and tearing up a part of its track on failure to pay rental for rails, or as to what should be the proper judgment or decree in such a situation; no question of making a person in possession of property sought to be recovered, and refusing to deliver it, a party defendant; and no effort to enforce a conveyance given as security for a debt, and covering several miles of a right of way in possession of a railroad company and used by it in the conduct of its business. They involved personal contracts between a firm and a railroad company as to erecting a sawmill and shipping lumber over the railroad, a sale by such firm to another, with an agreement

on the part of the purchaser to erect the mill and ship the lumber over the railroad, and a sale by such purchaser to another, with a like agreement between them.

*Judgment reversed. All the Justices concur, except Fish, C. J., absent.*