## HENDERSON LUMBER COMPANY *et al. v.* WAYCROSS AND WESTERN RAILWAY COMPANY *et al.*

1. A court can not finally adjudicate a case on demurrer at a hearing for interlocutory injunction before the appearance term of court, though the demurrer may be considered in passing on the question of granting or not granting the injunction. In such case no specific ruling can be made on the merits of a demurrer which sets up a misjoinder of parties. *Jones* v. *Carlton,* 146 *Ga.* 1 (90 S. E. 278).

2. Under the facts of this case the petitioners were not entitled to the injunctive relief sought, and the court erred in granting a temporary injunction.

　　　No. 619.　APRIL 12, 1918.　REHEARING DENIED JUNE 15, 1918.

Injunction. Before Judge Crum. Irwin superior court. August 11, 1917.

F. B. Sirmans, now deceased, owned a large and valuable body of timber land in Clinch county, consisting of twenty-three or twenty-four thousand acres. He entered into a contract with Alex. K. Sessoms and others by which the latter, representing the Waycross & Western Railroad, agreed to build a railroad through the timbered land of Sirmans and to establish and maintain upon the line of railroad upon the land of Sirmans a station to be known as "Sirmans." In consideration of this agreement on the part of the railroad company, Sirmans agreed to and did subscribe for $10,000 of the stock of the railroad company, and that he would cause to be constructed and maintained at or near Sirmans a sawmill, at which the timber upon the land belonging to Sirmans should be manufactured into lumber, which Sirmans agreed to have shipped over the line of the railroad company; and it was alleged in the petition that Sirmans agreed that in the event he

should at any time sell the timber he would require the purchaser to carry out the terms of the contract. The railroad was built according to the agreement. The station of Sirmans was built and maintained. Sirmans subscribed for the $10,000 of stock, and thereafter died. After the death of Sirmans, under an order granted by the judge of the superior court of Clinch county to Alex. K. Sessoms and C. Strickland, as receivers of Sirmans's estate, they sold the Sirmans timber to the Henderson Lumber Company, to be cut within ten years from the date of the sale, and executed a lease accordingly, which was duly recorded in the office of the clerk of the superior court of Clinch county. The material portions of this lease were as follows:

"For and in consideration of the sum hereinafter mentioned, have bargained, demised, sold and leased, and by these presents do bargain, demise, sell and lease, to the said party of the second part, its successors and assigns, subject to the conditions, covenants, reservations, and limitations hereinafter mentioned and set forth, all and singular the pine and cypress timber suitable for either sawmill or crosstie purposes growing, fallen, or standing at the date of these presents, or such as shall become suitable for such purposes during the term hereinafter mentioned for the cutting and removal of said timber on the following described lots and parts of lots of land. . . It is further expressly understood and agreed by and between the parties hereto, that if any of the notes hereinbefore mentioned shall not be paid at maturity and such default shall not be relieved or removed within thirty days from the maturity of said notes, then and in that event all of such notes shall be and become due and payable, anything in the notes to the contrary notwithstanding, and pending such default the said party of the second part, its successors and assigns, shall cease cutting; but if said default is removed within the period stated, the said cutting and removal of said timber shall be resumed by the said party of the second part, its successors and assigns, subject to the stipulations and agreements hereinafter contained; but if the said default is not removed by the payment of said past-due notes within the said thirty days, and by reason thereof all of said notes shall by the terms hereof be and become due and payable, then and in that event the said party of the second part, its successors and assigns, shall cease the cutting and removal of said timber until all of the

indebtedness evidenced by said note shall be paid to the said parties
of the first part, their successors and assigns, and the said second
party, its successors and assigns, agree and covenant that it will
faithfully keep and observe such covenants; and upon its failure
so to do, the first parties, their successors and assigns, shall be
entitled to secure an injunction to restrain the violation of such
covenants, and to restrain the cutting or removal of said timber,
and the second party, its successors and assigns, agree that legal
proceedings to enforce said covenant may be brought at the elec-
tion of said first parties, their successors and assigns, in Clinch
superior court.

"It is expressly agreed and covenanted that no title to any of
said timber herein leased, as long as it is uncut and standing on
the land hereinbefore described, or that may be fallen and lying
on the ground, or any unsawed logs, shall pass to the said party
of the second part, its successors or assigns, and title to all of said
timber herein leased shall only pass and become vested in said
party of the second part, its successors or assigns, after the same is
actually converted into lumber or crossties; but said title shall
remain as it was prior to the making of this lease and contract;
and it is further expressly agreed and covenanted that no timber
shall be cut and removed from the lands at any time in excess of
the value of the purchase-money paid on same, to be determined on
the basis of one thousand feet of lumber for every two dollars paid,
and for crossties at ten cents each; that is, the purchase-price of the
timber herein leased must be paid in advance of the cutting and
removal of same from the grounds, and without regard to the
maturity of any of the notes herein described; and when the cut-
ting and removal of said timber shall continue to the extent that
the amount cut shall be equal to the amount of the purchase-price
paid at that time, according to the foregoing rules of determining
the same, then the cutting and removal of said timber shall imme-
diately cease; and it is further agreed that no timber shall be
cut and removed from the ground until the full payment of the
first note hereinbefore described, due four months after date,
except enough to construct tramroads and mill of said party of
the second part and its necessary tenant-houses and other building
necessary to operate the mill. It is further agreed that in case
of the destruction or damage to any timber leased under this con-

tract, by storms, fire, or any other causes, there shall be no abatement of any part of the purchase-price; nor shall there be any abatement in the purchase-price in case any of the timber hereby leased shall be lost by failure of title or otherwise, it being understood that this lease is taken by the second party, its successors and assigns, without warranty or guaranty; the second party, having examined the timber hereby leased, takes the same on its own inspection and examination, and not on any representation of the receivers.

"It is understood, agreed, and covenanted between the parties hereto, that the party of the second part, its successors and assigns, will construct, establish, and maintain at or near Sirmans, Clinch county, Georgia, on a tract of land to be purchased from the first parties, a sawmill situated upon the Waycross & Western Railroad, which is owned by the Waycross & Western Railroad Company, a railroad corporation operating a railroad from Waycross, Ware county, Georgia, to Milltown, Berrien county, Georgia; and that in view of an agreement entered into between the late F. B. Sirmans and the Waycross & Western Railroad Company to ship the manufactured products of the timber upon his land over the said Waycross & Western Railroad, in consideration of the construction and operation of said railroad through that section of Clinch county at or near which the said timber is situated, which agreement upon the part of said railroad company has been performed by the construction and operation of said railroad, the second party, as a part of the consideration of said conveyance to it, its successors and assigns, of the timber for the purposes aforesaid, and hereby covenants and agrees to erect and construct its said sawmill at or near the point already indicated, and that it will in good faith ship the products of said timber over the said Waycross & Western Railroad, giving the tonnage to the said railroad company, and that it will in good faith keep and observe such covenants, and to that end it will agree to give such tonnage to said railroad company, excepting, however, from this covenant lots .... in the .... district of Clinch county, Georgia, lying on the south side of the Atlantic Coast Line Railroad. . . It is further understood and agreed between the parties hereto that all of the conditions, covenants, limitations, reservations, etc., are binding not only upon the said party of the second part, but upon its successors and as-

signs; and it is further agreed that upon the performance of the agreements and covenants upon the part of said party of the second part, its successors and assigns, it shall have and hold free and uninterrupted use and enjoyment of said timber for the time aforesaid, and for the purposes aforesaid, unto it, the said party of the second part, its successors and assigns."

The Henderson Lumber Company also purchased from the receivers a lot of land at or near the town of Sirmans as a site for its sawmill, but did not construct a sawmill at or near Sirmans, or elsewhere on the tract of timber bought, nor has it shipped over the line of the Waycross & Western Railroad Company any lumber or other products of the timber. On the contrary, the Henderson Lumber Company sold to the Milltown Manufacturing Company its lease of all the Sirmans timber, without condition or stipulation as to where it should be sawed or shipped. The sale of the timber to the Milltown Manufacturing Company was made after the timber lease between the receivers of the Sirmans estate and the Henderson Lumber Company had been duly recorded in the office of the clerk of the superior court of Clinch county. After the purchase of the timber the Milltown Manufacturing Company commenced to cut and saw the timber taken from the Sirmans land, and to saw it at Milltown instead of at Sirmans, and to ship the lumber and other products therefrom over other railroads than the Waycross & Western Railroad. Most of the lots of land upon which the timber leased to the Henderson Lumber Company was located were subsequently sold by the receivers to Mrs. Edna Sirmans Sessoms (an only daughter of F. B. Sirmans), subject to the timber lease of the Henderson Lumber Company, and she is now the owner of the lots of land purchased by her. The receivers as such own, among other property, the $10,000 capital stock in the Waycross & Western Railroad Company, and also some town lots of land in the town of Sirmans.

The Waycross & Western Railroad Company, Alex. K. Sessoms and C. Strickland as receivers of the estate of F. B. Sirmans, and Mrs. Edna Sirmans Sessoms united in the petition in this case, praying that the defendants, the Henderson Lumber Company and its transferee, the Milltown Manufacturing Company, their officers, agents, and employees, be enjoined from cutting and removing any of the timber and manufacturing it into lumber at Milltown or any

other point save at or near Sirmans, and from shipping the lumber thus manufactured over any other road than the Waycross & Western Railroad; and also for specific performance of the contract under which the timber was leased, and for general relief. The trial judge granted an interlocutory injunction against the defendants, and the Henderson Lumber Company and the Milltown Manufacturing Company excepted.

*E. K. Wilcox* and *Quincey & Rice,* for plaintiffs in error.

*Hardeman, Jones, Park & Johnston, Wilson & Bennett,* and *Harry S. Strozier,* contra.

HILL, J. (After stating the foregoing facts.)

1. The first headnote requires no elaboration.

2. F. B. Sirmans, since deceased, entered into an agreement, which rested in parol, with the builders of the Waycross & Western Railroad Company, whereby the railroad was to build its line of road through a large tract of timber land belonging to Sirmans, and to erect and maintain a depot or station on the land to be known as "Sirmans." Sirmans on his part was to construct a sawmill at or near the town of Sirmans, saw the timber into lumber and other products, and ship them over the line of railroad. Sirmans died before this project was completed, and certain receivers were appointed either before or after his death to wind up his affairs. By authority of an order of court they entered into a lease contract with the Henderson Lumber Company, which was duly recorded, whereby it was covenanted and agreed between the receivers on the one part, and the Henderson Lumber Company on the other, that the latter would construct and maintain, on a tract of land to be purchased from the receivers, a sawmill to be situated on the Waycross & Western Railroad, and to ship the manufactured products of the timber over the railroad in consideration of the construction and operation of the railroad at or near where the timber was situated, which agreement on the part of the railroad company had been complied with at the time of the execution of the lease. The lessee, Henderson Lumber Company, without constructing the sawmill or sawing or shipping any lumber over the railroad, executed its lease of the timber to the Milltown Manufacturing Company, which lease did not refer to the covenants recited in the original lease. The Milltown Manufacturing Company proceeded to cut the timber and ship it over another

railroad to Milltown and there manufacture it into lumber and other products, and did not ship any lumber over the Waycross & Western Railroad. The receivers, the Waycross & Western Railroad Company, and Mrs. Edna Sirmans Sessoms (who had purchased from the receivers the land upon which the timber was situated) brought the present suit against the Henderson Lumber Company and the Milltown Manufacturing Company, to enjoin them from cutting and shipping the timber, and for specific performance of the contract. On the hearing the court granted an interlocutory injunction, and the plaintiffs in error except to that judgment.

It is argued here with great force and plausibility that the covenants in the conveyance from the receivers to the Henderson Lumber Company are either covenants running with the land, or are restrictions in the conveyance which would bind the Milltown Manufacturing Company, which purchased from the first lessee with constructive notice. Under the facts of this case and the decision in the case of the *Waycross R. Co.* v. *Southern Pine Co.*, 115 *Ga.* 7 (41 S. E. 271), we can not agree to this contention. The facts in the case cited are very similar to those in the present case, and the contentions there were substantially the same as in this. There, as here, a railroad brought a petition to enjoin the cutting of timber under a contract which provided that the manufactured product of the timber on certain lands should be shipped over the plaintiff's line of railroad. But there, as here, the railroad company was not a party to the contract; and in the opinion of the court, delivered by Simmons, C. J., it was said: "There is no privity of contract between the plaintiff and the defendant. As a general rule a contract does not impose liability or confer rights upon persons not parties thereto, so as to entitle them to sue in their own names for its breach. . . We think, therefore, that there was no privity of contract between the plaintiff and the defendant, and that the former had no right to proceed in its own name against the latter, even in equity." It was also said: "If what we have said above is true, the plaintiff had no right or interest in the contracts. It was not a party to any of them and had no right to enforce them against the defendant. There was no privity of estate of any kind between the plaintiff and any of the covenantors. It had never owned the land or the timber,

and had never sold or purchased any interest in either. There could be no privity of estate between it and the defendant. Further than this, the covenants were not real but personal, and were collateral to the land." And to the same effect see *Atlantic &c. R. Co.* v. *Southern Pine Co.,* 116 *Ga.* 224 (42 S. E. 500). And see Civil Code, § 5516, which provides: "As a general rule the action on a contract, whether express or implied, or whether by parol or under seal or of record, must be brought in the name of the party in whom the legal interest in such contract is vested, and against the party who made it in person or by agent." We think that, in accordance with the rulings in the cases above cited, the covenants in the lease from the receivers to the Henderson Lumber Company were not real and did not attach to the land, but were personal covenants and collateral thereto. 1 Warvelle on Vendors (2d ed.), § 421. They did not amount to covenants running with the land, or as restrictions in the conveyance which would be binding on the second lessee, the Milltown Manufacturing Company. Clark on Contracts (3d ed.), 468 (3). The stipulation in the lease reserving title in the lessors to the timber until the same is actually converted into lumber or crossties by the lessee, its successors or assigns, was intended to secure the payment of the purchase-money, and there is no complaint that there has been any default in this regard.

True, the lease containing the covenants from the receivers to the Henderson Lumber Company was recorded, but the most that can be said of that is that it was only constructive notice of the personal covenants contained therein. The Waycross & Western Railroad Company was not a party to the lease to the Henderson Lumber Company. Mrs. Sessoms purchased the land after the lease to the Henderson Lumber Company. The receivers were parties to the lease to the Henderson Lumber Company; and in this respect this case is different from that of *Waycross Air-Line Railroad Co.* v. *Southern Pine Co.,* supra. But, as has been pointed out, the covenants in the lease were merely personal and did not run with the land, and the purchaser was not bound by them and did not assume any obligations in respect to them. There was no restriction on the Henderson Lumber Company selling the timber or on the Milltown Lumber Company cutting and shipping the lumber. The Milltown Manufacturing Company was not a party

to the contract containing the covenants; and the general rule is that a contract does not impose liability or confer rights upon persons not parties thereto, so as to entitle them to sue in their own names for its breach. *Waycross Air-Line Railroad Co.* v. *Southern Pine Co.*; supra.

Nor does the instant case fall within any of the exceptions to the above rule. See Clark on Contracts (3d ed.), 468 (3). What has been said with reference to the Waycross & Western Railroad Company applies to Mrs. Sessoms, who purchased the land on which the timber stood from the receivers of the Sirmans estate after the first lease was executed, and to the receivers themselves. The cases of *Sheppard* v. *Bridges,* 137 *Ga.* 615, 621 (74 S. E. 245), *Crawford* v. *Wilson,* 139 *Ga.* 654 (78 S. E. 30, 44 L. R. A. (N. S.) 73), and *Louisville &c. R. Co.* v. *Nelson,* 145 *Ga.* 594 (89 S. E. 693), relied on by the defendants in error, are different in their facts from the instant case, and are not controlling. The ruling in the *Sheppard* case would have to be extended beyond what was decided, in order to apply to a case like the present.

*Judgment reversed. All the Justices concur, except Fish, C. J., absent.*